[No. B195450. Second Dist., Div. Eight. Aug. 20, 2008.]

JOSEPH PISCITELLI, Plaintiff and Respondent, v.
SALESIAN SOCIETY, Defendant and Appellant.

**4**

COUNSEL

Foley & Lardner, Stephen A. McFeely, Leila Nourani, Marisa J. Ippolito; Sedgwick, Detert, Moran & Arnold, Thomas A. Delaney, Wayne B. Mason and Kirk C. Jenkins for Defendant and Appellant.

Furtado, Jaspovice & Simmons, Richard J. Simons; and Daniel U. Smith for Plaintiff and Respondent.

OPINION

RUBIN, J.—Defendant The Salesian Society (the Society) appeals from the judgment entered after a jury determined it was negligent for failing to protect plaintiff Joseph Piscitelli from childhood sexual abuse at the hands of one of the Society's priests. We reject the Society's contention that the trial court erred by admitting evidence of another cleric's sex abuse conviction in order to impeach that cleric's testimony, and therefore affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

In July 2006 a jury awarded Joseph Piscitelli $600,000 for sexual abuse he suffered from 1969 through 1971 at the hands of Father Joseph Whelan, who was the vice-principal of the Society-run high school Piscitelli attended at that time.[1] The only issue on appeal is whether the trial court erred by letting Piscitelli impeach a former Salesian brother, Salvatore Billante, with evidence that Billante had been convicted of child molestation.

Billante's testimony was relevant to whether Piscitelli's negligence claim against the Society was barred by the statute of limitations. Piscitelli claimed his action was timely under the one-year revival period that was in place during 2003. (Code Civ. Proc., § 340.1, subds. (b)(2), (c).) Those provisions revived previously time-barred claims against entities that employed a victim's abuser despite being on notice of his unlawful sexual conduct, and took no steps to safeguard children under their care from the employee. At the time Whelan abused Piscitelli, Billante was in charge of a Society-run Boys Club that was adjacent to the Society's high school. Piscitelli said he sometimes went to the club to shoot pool after school. According to Piscitelli, twice he saw Whelan masturbating at the club while

---

[1] The jury found Whelan and the Society each 50 percent at fault, and apportioned the damage award between them accordingly. Whelan is not a party to this appeal.

Whelan was positioned behind a pool table. Piscitelli said that Billante watched this happen and also told a psychotherapist that Billante appeared to be enjoying it. The Society does not dispute that the statute of limitations' notice requirement was satisfied if Piscitelli's account was true.[2]

During his deposition, Billante denied having seen Whelan masturbate at the Boys Club. In 1989, Billante was convicted of committing a lewd act with a child under the age of 14. (Pen. Code, § 288a.) Anticipating that Piscitelli would impeach Billante at trial with that conviction, the Society moved in limine to bar its admission at trial. Although the Society acknowledged that a witness's character for honesty can be impeached by showing the witness was a convicted felon (Evid. Code, § 788), it argued that Billante's conviction should be excluded under Evidence Code section 352 because its prejudicial impact far outweighed any probative value it might have.[3] Piscitelli opposed the motion, contending the evidence was relevant to both Billante's credibility, including his motive to deny his knowledge of sexual abuse, as well as to several liability-related issues, including the Society's breach of its duty to protect children in its care; the existence of sexual abuse by the Society's clerics; a pattern and practice of such abuse; the reasonableness of the Society's policies and practices for preventing such abuse; and the failure to protect Piscitelli when he sought protection from Whelan.

The trial court rejected Piscitelli's contention that Billante's conviction had any relevance to the liability issues. It believed that Billante could be impeached with the fact that he was a convicted felon, but added that if this had been a criminal trial, it would exclude the nature of the conviction. The court wrestled with whether it should also tell the jury about the nature of Billante's conviction, noting that the "prejudicial effect is obvious." Despite its "reservations and trepidation," the court appeared to give two reasons why it believed the jury should also be told about the nature of Billante's crime: First because "it is an offense of moral turpitude . . . [i]t does go to his credibility," and second because it goes "to his credibility in terms of denial of witnessing the events that are described or will be described by Mr. Piscitelli."[4] The court said it would limit Piscitelli to showing that Billante had been convicted of sexually abusing a child in 1989, and would

---

[2] Billante testified that he would have had a duty to report such an incident to Society officials. Because the issue has not been raised, our opinion does not consider whether this evidence in fact established the required notice under Code of Civil Procedure section 340.1, subdivision (b)(2).

[3] All further undesignated section references are to the Evidence Code.

[4] See footnote 9, *post*.

also instruct the jury that it was to consider the evidence for the sole purpose of evaluating Billante's credibility, and not to use it as evidence that Whelan in fact molested Piscitelli.[5]

Piscitelli called Billante as a hostile witness. (§ 776.) Piscitelli did not directly ask Billante to admit or deny whether the two masturbation incidents occurred, but did ask him whether he believed it would have been physically impossible to commit an act of sexual misconduct in the Boys Club's game room. Billante said that given the layout of the room and the number of people who were usually there, it would have been impossible to get away with such conduct. Piscitelli's lawyer also questioned Billante about whether Billante recalled ever seeing Whelan or Piscitelli at the Boys Club and whether Billante's duties at the time included safeguarding the welfare of the students who would go there and reporting any sexual misconduct had he observed it. At the end of his direct examination, Billante was asked about, and admitted, the fact of his 1989 conviction. On cross-examination by the Society, Billante flatly denied that the two masturbation incidents ever occurred. The jury was instructed that Billante's 1989 conviction was for conduct in 1987 or 1988 that took place at a different location many years after the alleged abuse occurred, that the evidence had no bearing on the issue of whether Whelan in fact abused Piscitelli, and that it was to be used solely to evaluate Billante's credibility.[6]

## DISCUSSION

■ Evidence that a witness has been convicted of a felony is admissible to attack the witness's credibility. (§ 788.)[7] Such evidence is a general attack

---

[5] At oral argument, the Society's lawyer claimed that the trial court found the evidence was not probative, contending that this created an internal conflict in the court's ruling which showed that the court either improperly weighed the section 352 factors, or did not weigh them at all. The Society has misread the record. While the trial court began by stating that Billante's prior conviction had no probative value on the liability issues, it went on to expressly find that the evidence had probative value in the context of evaluating Billante's credibility.

[6] The Society makes much of the fact that Piscitelli called Billante as a hostile witness, contending that he did so for no other reason than to set him up for the impeachment evidence. The Society states by way of a footnote to its opening appellate brief that "Obviously, there was no reason for [it] to call Billante as a witness, given that Billante had seen no misconduct and Piscitelli's own testimony was not credible." This is not an express denial of any intent to call Billante as a witness and ignores the fact that Piscitelli did not question Billante about the masturbation incidents on direct examination. Instead, it was the Society that asked him on cross-examination whether those incidents happened. The impeaching evidence would have been admitted whether the Society or Piscitelli had called Billante to the stand. Regardless, it is proper to call someone as a hostile witness and then impeach him. (§ 785.)

[7] There are four exceptions to that rule: if the indictment or information was dismissed; if the witness was pardoned based on innocence; if the witness received a certificate of rehabilitation and pardon; or if the witness was convicted in another jurisdiction and was

on a witness's character for honesty. (*Robbins v. Wong* (1994) 27 Cal.App.4th 261, 269 [32 Cal.Rptr.2d 337] (*Robbins*); *People v. Sellas* (1931) 114 Cal.App. 367, 372 [300 P. 150]; see *Greene v. McElroy* (1959) 360 U.S. 474, 496 [3 L.Ed.2d 1377, 79 S.Ct. 1400].) A more particular attack on a witness's credibility may occur by showing his bias, interest, or other motive to lie. (§ 780, subd. (f); *Greene, supra,* 360 U.S. at p. 496.) The admission of such evidence is still subject to section 352, which allows the court to exclude evidence if its probative value is substantially outweighed by its prejudicial effect. (*Robbins, supra,* at p. 274; *People v. Knox* (1979) 95 Cal.App.3d 420, 434–435 [157 Cal.Rptr. 238] (*Knox*).)

The Society's opening appellate brief discusses only the first category of credibility evidence—the use of a felony conviction as character evidence under section 788. Piscitelli's responsive appellate brief raises both types—section 788 character evidence and evidence of bias under section 780. In its reply brief, the Society contends Billante's conviction was not admissible to show bias because (1) to do so would violate section 786, which makes inadmissible evidence of a witness's character for traits other than honesty or veracity;[8] and (2) no reported California decisions have authorized the use of a witness's felony conviction in order to show bias. As set forth below, we conclude that such evidence is admissible to show witness bias.[9]

▮ Sections 786 through 790 govern the admissibility of character trait evidence to attack or support the credibility of a witness. (*People v. Thompson* (1979) 98 Cal.App.3d 467, 475 [159 Cal.Rptr. 615].) As just noted above, section 786 limits character-credibility evidence to honesty and veracity and their opposites because those are the only four traits relevant to that issue.

---

pardoned based on innocence or received a certificate of rehabilitation and pardon. (§ 788, subds. (a)–(d).) None applies here.

[8] Section 786 states: "Evidence of traits of his character other than honesty or veracity, or their opposites, is inadmissible to attack or support the credibility of a witness."

[9] When wrestling with the admissibility of the evidence, the trial court said: "Again, the prejudicial effect is obvious. But nevertheless, it is an offense of moral turpitude. It does go to his credibility. It does go to his credibility in terms of denial of witnessing the events that are described . . . by Mr. Piscitelli." The court's first statement about moral turpitude is the type of general character trait evidence permitted by section 788. The next portion, concerning the relevance of the evidence to Billante's credibility as it related to his denial of witnessing the masturbation incidents, sounds to us much more like the motive to lie issue raised by Piscitelli in opposition to the motion in limine. At oral argument, the Society's lawyer agreed that the transcript was vague, and so do we. To the extent the order is ambiguous, we will resolve the ambiguity in favor of affirmance under the well-established rule that a trial court's orders are presumed correct. (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631 [80 Cal.Rptr.2d 378].) Accordingly, we read the court's comments as twin findings: first, that Billante's prior conviction was admissible as general character trait evidence under section 788; and second, that it was admissible to explain *why* he might lie about the masturbation incidents. The latter is just another way of stating that a witness was biased.

(*Thompson*, at p. 475.) With the exception of prior felony convictions under section 788, section 787 prohibits the admission of evidence of specific instances of a witness's conduct to attack his credibility when its only relevance is to establish a trait of his character.[10] (*Thompson*, at p. 475.) Even if evidence of a witness's specific conduct violates section 787, if that evidence is relevant to prove a witness's bias or improper motive, it is admissible. (*Knox, supra*, 95 Cal.App.3d at p. 434.) Accordingly, regardless of section 786 or 788, if evidence that Billante was a child molester was relevant to show bias, it was still admissible under section 787. (See *Inyo Chemical Co. v. City of Los Angeles* (1936) 5 Cal.2d 525, 544 [55 P.2d 850] [if evidence is admissible for any purpose it must be received, even if it is highly improper for another purpose].)

The Society is correct that no reported California decisions have expressly authorized the use of a witness's prior convictions to show bias, but a few have come close. In *People v. Adams* (1983) 149 Cal.App.3d 1190, 1194–1195, the court held that the potential bias of a prosecution witness in a forgery case could be shown by evidence that he was on probation following his juvenile adjudication of grand theft because his status as a probationer left him vulnerable to law enforcement pressure. In *People v. Bradley* (1981) 115 Cal.App.3d 744 [171 Cal.Rptr. 487], the defendant on trial for armed robbery was not allowed to ask a prosecution eyewitness about the witness's one-year-old Texas conviction for car theft. The defendant argued the evidence was relevant to show the bias of the witness, who the defendant claimed had been the actual robber. The appellate court noted that the defendant had "correctly state[d] the law," but refused to find error because instead of barring the evidence, the trial court simply deferred the matter for further inquiry into both the nature of the Texas conviction and the facts required to show the existence of bias. (*Id.* at p. 749.)

In *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1210 [275 Cal.Rptr. 729, 800 P.2d 1159], the defendant complained that the trial court erred by failing to instruct the jury that the prosecution testimony of a jailhouse informant should be viewed with distrust. The Supreme Court disagreed, holding that the standard credibility instructions were sufficient because the jurors knew the informant was a convicted murderer with a motive to lie.

In *People v. Buzzell* (1940) 15 Cal.2d 654 [104 P.2d 503], a defendant's alibi witnesses were impeached generally for veracity with certain prior felony convictions. On appeal, the defendant complained that the prosecutor went too far by asking those witnesses about how those convictions involved

---

[10] Section 787 states: "Subject to Section 788, evidence of specific instances of his conduct relevant only as tending to prove a trait of his character is inadmissible to attack or support the credibility of a witness."

crimes committed with the defendant, which led them to spend jail time with the defendant as well. Because those topics were relevant to the bias of the defense witnesses, the court held that questions did not "exceed[] the bounds of propriety or result[] in a miscarriage of justice." (*Id.* at pp. 660–661.)

Federal and other state courts have made explicit what is implicit in these California decisions. In *United States v. Lawson* (2d Cir. 1982) 683 F.2d 688 (*Lawson*), the court held it was error for the district court to prevent the defendant from cross-examining a prosecution witness about her conviction for prostitution and about whether another prosecution witness had been her pimp. While the evidence would not have been admissible under the rule that permitted evidence of a witness's prior conviction involving an act of dishonesty or false statement if offered to show her character for truthfulness (Fed. Rules Evid., rule 609(a)(2), 28 U.S.C.), it was admissible in that case because it "was designed to show not that [she] was a prostitute, and, therefore, a liar, but that she was a prostitute and that [the other witness], as her pimp, might have caused her to lie about [defendant's] involvement" because the other witness had animus toward the defendant and had not yet been sentenced on his negotiated plea deal. (*Lawson,* at p. 693.) In *Howard v. State* (Fla.Dist.Ct.App. 1981) 397 So.2d 997, 998, the court held that no error occurred when a defense witness in a trial for battery on a peace officer and resisting arrest was impeached with her obstruction of justice conviction because it was relevant to show the witness had a bias against the police. In *Scott v. Com.* (1997) 25 Va.App. 36 [486 S.E.2d 120, 122–123], the court held that error occurred, albeit harmless under the circumstances, when defense counsel was not allowed to question a prosecution jailhouse informant about the nature of his several convictions unless they involved moral turpitude. Although Virginia law allowed impeachment by prior felony and misdemeanor convictions involving moral turpitude in order to undermine a witness's character for veracity, that rule did not apply when considering such evidence in order to show witness bias. (*Id.,* 486 S.E.2d at p. 122.)

■ When these persuasive non-California authorities, along with the California decisions discussed above, are considered as a whole, we conclude that if it is relevant to the issue, a witness may be impeached by evidence of a prior conviction in order to show bias, without regard to the nature of the underlying crime as it relates to the character traits of honesty and truthfulness.[11] Consider, for example, an eyewitness to a car accident testifying for the plaintiff that the defendant ran a red light. If that witness had once been

---

[11] We limit our holding to the facts present in this case: that this was a witness to a civil action who was impeached with a felony conviction. We are not presented, for example, with a testifying witness who is also the accused in a criminal case.

convicted of a felony for assaulting the defendant, that conviction would be very probative of the witness's prejudice against the defendant and a possible motive to lie at trial about the cause of the accident. Should the Society's logic prevail, a jury would never hear such evidence.

That leaves for resolution two issues: Whether Billante's conviction was probative of his potential bias and whether, despite its probative value, the evidence should have been excluded under section 352. We tackle the bias issue first.

■ In *People v. Curry* (1950) 97 Cal.App.2d 537 [218 P.2d 153] (*Curry*), defendants on trial for robbery were not allowed to impeach the eyewitness testimony of a police officer with evidence that the officer knew the defendants had filed a complaint against other officers for an alleged postarrest beating. According to the defendants, the evidence was relevant because it showed that due to the complaint, all police officers testifying against them were prejudiced. The appellate court held that the trial court erred by excluding the evidence, but affirmed the convictions because the error was harmless. (*Id.* at pp. 545–546.)[12] Likewise, evidence that a witness belongs to the same gang as a criminal defendant is admissible to show the witness's potential bias for the defendant. (*People v. Bojorquez* (2002) 104 Cal.App.4th 335, 342 [128 Cal.Rptr.2d 411].) With these decisions in mind, it is not too far a stretch to conclude that one cleric convicted of child molestation could have sympathy for, and therefore be biased in favor of, a fellow cleric from the same order who was being sued for the same offense, and might also be prejudiced against the plaintiff who brought those accusations. As in *Lawson, supra,* 683 F.2d at page 693, Billante's conviction was not introduced only to show he was a felon and was, for that reason alone, less trustworthy. Instead, it was also introduced to show that he was a child molester who might well be inclined to lie for a fellow cleric he had known for years who was accused of the same offense.

■ As a corollary to this conclusion, had the evidence been excluded the jury would have been left with a false impression that Billante had no reason to lie and might likely find it hard to believe that an innocent cleric who witnessed the masturbation incidents had not intervened or reported them to his superiors. (*People v. Williamson* (1977) 71 Cal.App.3d 206, 212–213 [139 Cal.Rptr. 222] [where no dissimilar prior conviction is available, witness may be impeached with evidence of similar crime because no witness is entitled to

---

[12] *Curry* was disapproved on another point in *People v. McCaughan* (1957) 49 Cal.2d 409, 420–421 [317 P.2d 974].

a " 'false aura of veracity' "].) Therefore, the evidence was very relevant to the issue of Billante's credibility, and we reject the Society's contention to the contrary.[13]

■    We next consider whether, despite its relevance to the issue of Billante's bias, the evidence should have been excluded under section 352. Pursuant to that section, "prejudicial" does not mean the evidence is damaging to a party's case. Instead, it means "evoking an emotional response that has very little to do with the issue on which the evidence is offered. [Citation.]" (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 597 [103 Cal.Rptr.2d 492] (*Rufo*).) Evidence must be excluded under section 352 only if it is unduly prejudicial despite its legitimate probative value because it poses an intolerable risk to the fairness of the proceedings or the reliability of the outcome. (86 Cal.App.4th at p. 597.) We review the trial court's ruling under the abuse of discretion standard and will reverse only if the ruling was beyond the bounds of reason and resulted in a manifest miscarriage of justice. (*Id.* at p. 596.)[14]

The Society's section 352 analysis does not address prejudice in the context of impeachment evidence introduced to show bias under section 780. Instead, it is confined to the prejudicial effect of felony conviction evidence admitted under section 788 to show a witness's general character for truthfulness. Relying on several criminal law decisions applicable in that context,[15] the Society contends in its opening appellate brief that evidence of Billante's conviction violated section 352 because it was remote in time; Billante's crime had little or no bearing on his propensity to lie; its similarity to the allegations against Whelan would likely lead the jury to the conclusion that the Society was filled with abusers, meaning Whelan must have been one as well; and the jury would likely infer that, as a child molester, Billante "would be naturally inclined to lie when an associate was charged with the same misconduct." We will evaluate these contentions in turn, in their proper context.[16]

---

[13] The evidence was also corroborative of Piscitelli's statement to his therapist that Billante appeared to enjoy watching the incidents.

[14] The jury verdict was split nine to three on some issues and nine to two (with one abstention) on others, and the Society devoted a large portion of its appellate briefs to pointing out purported weaknesses in Piscitelli's case to show how the court's ruling led to a miscarriage of justice in a closely decided case. Because we hold that the court did not err in admitting the impeachment evidence, we need not address that evidence or that issue.

[15] Although the criminal law factors are not binding in civil cases, they may serve as guidelines when determining whether evidence of a witness's felony conviction should be excluded under section 352. (*Robbins, supra,* 27 Cal.App.4th at pp. 273–274.)

[16] For ease of reference we will refer to these competing analyses as either a 352 bias analysis or a 352/788 analysis.

■ When conducting a 352/788 analysis at criminal trials, a witness's felony conviction that is remote in time might ordinarily have little or no bearing on the credibility of a witness who has since lived a commendable life, thereby moving the needle closer toward exclusion of the evidence under section 352. (*People v. Woodard* (1979) 23 Cal.3d 329, 336–337 [152 Cal.Rptr. 536, 590 P.2d 391].) When the witness is not the defendant, remoteness of the conviction is a prominent factor. (*People v. Clair* (1992) 2 Cal.4th 629, 654 [7 Cal.Rptr.2d 564, 828 P.2d 705].) That is not necessarily so in a 352 bias analysis, however, where the mere passage of time is not always likely to lessen the effects of partisan bias or prejudice. Although Billante was convicted of child molestation 17 years before trial began, the trial court could have reasonably concluded that the intervening years had done nothing to reduce his potential bias.

The Society's contention that a child molestation conviction is not necessarily a good indicator of a witness's propensity to lie is inapplicable because it is strictly part of a 352/788 analysis. As discussed above, assuming that Billante's conviction was not admissible to show he was generally untrustworthy, it was relevant to his potential bias for Whelan and prejudice against Piscitelli and other plaintiffs like him.[17]

We recognize that admitting evidence of Billante's conviction posed some risk that the jury would find it easier to believe that many of the Society's clerics, including Whelan, were child molesters. However, the court instructed the jury to use the evidence only for the purpose of evaluating Billante's credibility. The Society contends that this instruction somehow caused more harm than good. We presume the jury followed that carefully worded instruction, and it was within the trial court's discretion to determine whether it could do so. (*Rufo, supra*, 86 Cal.App.4th at pp. 598–599, and cases cited therein.)

Finally, the Society's contention that the evidence might lead the jury to conclude that Billante would be inclined to lie for an associate charged with the same misconduct is precisely the reason the evidence was appropriately probative. With all this in mind, given the relevance of Billante's conviction to his potential bias, we cannot conclude that the trial court exceeded the bounds of reason and abused its discretion by allowing the impeachment evidence.

---

[17] Even so, it is still a crime of moral turpitude and moral depravity that has some tendency in reason to undermine witness credibility and the trial court still has discretion in a proper case to permit it in evidence. (*People v. Castro* (1985) 38 Cal.3d 301, 314 [211 Cal.Rptr. 719, 696 P.2d 111] [child molestation is an act of moral depravity]; *People v. Ballard* (1993) 13 Cal.App.4th 687, 696 [16 Cal.Rptr.2d 624].)

## DISPOSITION

For the reasons set forth above, the judgment is affirmed. Respondent shall recover his costs on appeal.

Cooper, P. J., and Flier, J., concurred.