Filed 6/30/14

# IN THE SUPREME COURT OF CALIFORNIA

MARIA AYALA et al., )
)
      Plaintiffs and Appellants, )
)           S206874
      v. )
)     Ct.App. 2/4 B235484
ANTELOPE VALLEY NEWSPAPERS, )
INC., )    Los Angeles County
)   Super. Ct. No. BC403405
      Defendant and Respondent. )
_____ )

Antelope Valley Newspapers, Inc. (Antelope Valley) is the publisher of the Antelope Valley Press, a daily newspaper. To deliver the paper to its subscribers, Antelope Valley contracts with individual carriers. Four carriers, Maria Ayala, Josefina Briseño, Rosa Duran, and Osman Nuñez, contend Antelope Valley illegally treats them as independent contractors, rather than employees, and thereby deprives them of a host of wage and hour protections to which they are legally entitled.

The merits of the complaint are not before us. The sole question is whether this case can proceed as a class action. The trial court concluded the case could not, holding that on the critical question whether Ayala and others were employees, plaintiffs had not shown common questions predominate; to determine employee status, in the trial court's view, would necessitate numerous unmanageable individual inquiries into the extent to which each carrier was

afforded discretion in his or her work.  The Court of Appeal disagreed in part, holding that the trial court had misunderstood the nature of the inquiries called for, and remanded for reconsideration of the class certification motion as to five of the complaint's claims.

We affirm.  Whether a common law employer-employee relationship exists turns foremost on the degree of a hirer's right to control how the end result is achieved.  (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 (*Borello*).)  In turn, whether the hirer's right to control can be shown on a classwide basis will depend on the extent to which individual variations in the hirer's rights vis-à-vis each putative class member exist, and whether such variations, if any, are manageable.  Because the trial court principally rejected certification based not on differences in Antelope Valley's right to exercise control, but on variations in how that right was exercised, its decision cannot stand.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant Antelope Valley circulates the Antelope Valley Press daily to subscribers throughout Los Angeles and Kern Counties.  To distribute the paper, Antelope Valley operates distribution facilities in both counties and contracts with individual carriers using a preprinted standard form contract.  Named plaintiffs Maria Ayala, Josefina Briseño, Rosa Duran, and Osman Nuñez (collectively Ayala) are or were newspaper carriers for Antelope Valley.

In December 2008, Ayala sued on behalf of a putative class of Antelope Valley carriers.  The complaint contends that Antelope Valley treats its carriers as independent contractors when, as a matter of law, they are employees.  Consequently, Antelope Valley denies its carriers various wage and hour protections to which they are entitled.  The complaint alleges unpaid overtime, unlawful deductions, failure to provide breaks, and failure to reimburse for

2

business expenses, among other statutory and wage order violations (Lab. Code, §§ 221, 223, 226, 226.3, 226.7, 512, 1174, 1194, 2802; Industrial Welf. Com. wage order No. 1-2001, subds. 3, 7–9, 11–12 (IWC wage order No. 1-2001) (Cal. Code Regs., tit. 8, § 11010)), as well as unfair competition based on these violations (Bus. & Prof. Code, § 17200).

Ayala sought class certification. She contended the central question in establishing liability was whether carriers are employees, and that this question could be resolved through common proof, including but not limited to the contents of the standard contract entered into between Antelope Valley and its carriers. Antelope Valley opposed certification. Because of alleged individual variations in how carriers performed their work, it disagreed that the question of employee status could be resolved on a common basis. Antelope Valley further argued that even if the carriers were employees, some of the causes of action presented additional unmanageable individual issues that should nevertheless preclude certification.

The trial court denied class certification. It concluded common issues did not predominate because resolving the carriers' employee status would require "heavily individualized inquiries" into Antelope Valley's control over the carriers' work. Moreover, the claims for overtime and for meal and rest breaks would require additional claim-specific individualized inquiries. Because individual issues predominated, class resolution of the claims was not superior to individual lawsuits by each carrier.

A unanimous Court of Appeal affirmed in part and reversed in part. It agreed with the trial court that Ayala had not shown how her overtime, meal break, and rest break claims could be managed on a classwide basis. As for the remaining claims, however, it disagreed that proof of employee status would necessarily entail a host of individual inquiries. In the Court of Appeal's view,

3

although evidence of variation in how carriers performed their work might support Antelope Valley's position that it did not control the carriers' work, such evidence would not convert the critical question—how much *right* does Antelope Valley have to control what its carriers do?—from a common one capable of answer on a classwide basis to an individual one requiring mini-trials.

We granted Antelope Valley's petition for review.

## DISCUSSION

### I. *Class Action Principles*

"The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).) Here, the presence or absence of predominant common questions is the sole issue on appeal.[1]

We review the trial court's ruling for abuse of discretion and generally will not disturb it " 'unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1022.) We review the trial court's actual reasons for

---

[1] While the trial court also concluded class treatment was not superior to other means of resolving the complaint's claims, that determination was wholly derivative of its conclusion that individual questions of fact and law would predominate over common ones. Our opinion therefore focuses on the trial court's predominance analysis.

4

granting or denying certification; if they are erroneous, we must reverse, whether or not other reasons not relied upon might have supported the ruling. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 436.)

## II. *The Test for Employee Status*

We begin by identifying the principal legal issues and examining the substantive law that will govern. In doing so, we do not seek to resolve those issues. Rather, the question at this stage is whether the operative legal principles, as applied to the facts of the case, render the claims susceptible to resolution on a common basis. (*Brinker*, *supra*, 53 Cal.4th at pp. 1023–1025; *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327 [the focus "is on what type of questions—common or individual—are likely to arise in the action, rather than on the merits of the case"].)

The trial court and Court of Appeal correctly recognized as the central legal issue whether putative class members are employees for purposes of the provisions under which they sue. If they are employees, Antelope Valley owes them various duties that it may not have fulfilled; if they are not, no liability can attach. In turn, whether putative class members' employee status can be commonly resolved hinges on the governing test for employment.

In deciding whether plaintiffs were employees or independent contractors, the trial court and Court of Appeal applied the common law test, discussed most recently at length in *Borello*, *supra*, 48 Cal.3d 341. We solicited supplemental briefing concerning the possible relevance of the additional tests for employee status in IWC wage order No. 1-2001, subdivision 2(D)–(F). (See *Martinez v. Combs* (2010) 49 Cal.4th 35, 57-66; *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129, 1146–1147; *Sotelo v. Medianews Group, Inc.* (2012) 207 Cal.App.4th 639, 660–662.) In light of the supplemental briefing, and because

5

plaintiffs proceeded below on the sole basis that they are employees under the common law, we now conclude we may resolve the case by applying the common law test for employment, without considering these other tests. (Cf. *Sav-on Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 327 [the class certification inquiry must focus on "whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment"].) Accordingly, we leave for another day the question what application, if any, the wage order tests for employee status might have to wage and hour claims such as these, and confine ourselves to considering whether plaintiffs' theory that they are employees under the common law definition is one susceptible to proof on a classwide basis.

Under the common law, " '[t]he principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired.' " (*Borello*, *supra*, 48 Cal.3d at p. 350, quoting *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 946; accord, *Empire Star Mines Co. v. Cal. Emp. Com.* (1946) 28 Cal.2d 33, 43.) What matters is whether the hirer "retains all *necessary* control" over its operations. (*Borello*, at p. 357.) " '[T]he fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it.' " (*Burlingham v. Gray* (1943) 22 Cal.2d 87, 100; see *Toyota Motor Sales U.S.A., Inc. v. Superior Court* (1990) 220 Cal.App.3d 864, 876; *Grant v. Woods* (1977) 71 Cal.App.3d 647, 653.) Perhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because "[t]he power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities." (*Malloy v. Fong* (1951) 37 Cal.2d 356, 370; see *Borello*, at p. 350; *Kowalski v. Shell Oil Co.* (1979) 23 Cal.3d

6

168, 177; *Isenberg v. California Emp. Stab. Com.* (1947) 30 Cal.2d 34, 39; *Burlingham*, at pp. 99–100.)[2]

While the extent of the hirer's right to control the work is the foremost consideration in assessing whether a common law employer-employee relationship exists, our precedents also recognize a range of secondary indicia drawn from the Second and Third Restatements of Agency that may in a given case evince an employment relationship. Courts may consider "(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee." (*Borello*, *supra*, 48 Cal.3d at p. 351; see, e.g., *Tieberg v. Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d at pp. 949–950 & fn. 4; *Empire Star Mines Co. v. Cal. Emp. Com.*, *supra*, 28 Cal.2d at pp. 43–44; *Futrell v. Payday California, Inc.* (2010) 190 Cal.App.4th 1419, 1434; Rest.3d Agency, § 7.07, com. f, pp. 210–211; Rest.2d Agency, § 220, subd. (2).)[3]

---

[2] The worker's corresponding right to leave is similarly relevant: " 'An employee may quit, but an independent contractor is legally obligated to complete his contract.' " (*Perguica v. Ind. Acc. Com.* (1947) 29 Cal.2d 857, 860.)

[3] As Justice Chin's concurrence notes, *Borello* recognized "the concept of 'employment' embodied in the [Workers' Compensation] Act is not inherently limited by common law principles" (*Borello*, *supra*, 48 Cal.3d at p. 351) and

*(footnote continued on next page)*

### III. *Predominance and Common Law Employee Status*

#### A. *Control*

The trial court considered the various criteria relevant to certification, concluding the proposed class was sufficiently numerous and ascertainable and the class representatives had claims typical of the class and could adequately represent it. It further concluded, however, that common questions did not predominate; instead, "numerous individual inquiries" would be "required to determine whether carriers are member of the class," and thus a class action was not a superior way of proceeding. This was so because the record demonstrated "heavily individualized inquiries [would be] required to conduct the 'control test' " and decide the central question whether any given worker was an employee.

As the parties and trial court correctly recognized, control over how a result is achieved lies at the heart of the common law test for employment. (*Borello*, *supra*, 48 Cal.3d at p. 350.) Indeed, absent a common (or individual, but manageable) means of assessing the degree of the hirer's control, we doubt claims dependent on application of the common law test could be certified.

Significantly, what matters under the common law is not how much control a hirer *exercises*, but how much control the hirer retains the *right* to exercise.

---

*(footnote continued from previous page)*

identified a handful of other considerations that might "overlap those pertinent under the common law" (*id.* at p. 354; see *id.* at pp. 351–355 [discussing additional considerations relevant in light of the remedial purposes of the statutory scheme there at issue]). Strictly speaking, however, those further considerations are not part of the common law test for employee status. The concurrence's assertion they are relevant here (conc. opn. of Chin, J., *post*, at pp. 12–14) rests on the legal assumption they play a role in deciding employee status for wage claims, an assumption we decline to embrace, leaving for another day resolution of its validity. (See *Martinez v. Combs*, *supra*, 49 Cal.4th at pp. 64, 73.)

8

(*Perguica v. Ind. Acc. Com.*, *supra*, 29 Cal.2d at pp. 859–860 ["The existence of such right of control, and not the extent of its exercise, gives rise to the employer-employee relationship."]; *Empire Star Mines Co. v. Cal. Emp. Com.*, *supra*, 28 Cal.2d at p. 43 ["If the employer has the authority to exercise complete control, whether or not that right is exercised with respect to all details, an employer-employee relationship exists."]; *Industrial Ind. Exch. v. Ind. Acc. Com.* (1945) 26 Cal.2d 130, 135 ["The right to control and direct the activities of the alleged employee or the manner and method in which the work is performed, whether exercised or not, gives rise to the employment relationship."]; *S.A. Gerrard Co. v. Industrial Acc. Com.* (1941) 17 Cal.2d 411, 414 ["the right to control, rather than the amount of control which was exercised, is the determinative factor"]; *Hillen v. Industrial Acc. Com.* (1926) 199 Cal. 577, 581–582 ["It is not a question of interference, or non-interference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work; but a question of the right to act, as distinguished from the act itself or the failure to act."].)  Whether a right of control exists may be measured by asking " ' "whether or not, if instructions were given, they would have to be obeyed" ' " on pain of at-will " ' "discharge[] for disobedience." ' "  (*Toyota Motor Sales U.S.A., Inc. v. Superior Court*, *supra*, 220 Cal.App.3d at p. 875.)

A court evaluating predominance "must determine whether the elements necessary to establish liability [here, employee status] are susceptible to common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence."  (*Brinker*, *supra*, 53 Cal.4th at p. 1024.)  Consequently, at the certification stage, the relevant inquiry is not what degree of control Antelope Valley retained over the manner and means of its papers' delivery.  It is, instead, a question one step further removed:  Is Antelope Valley's right of control over its carriers, whether great or small, sufficiently

9

uniform to permit classwide assessment? That is, is there a common way to show Antelope Valley possessed essentially the same legal right of control with respect to each of its carriers? Alternatively, did its rights vary substantially, such that it might subject some carriers to extensive control as to how they delivered, subject to firing at will, while as to others it had few rights and could not have directed their manner of delivery even had it wanted, with no common proof able to capture these differences?

The trial court lost sight of this question. Its order reveals the denial of certification ultimately rested on two related determinations: (1) the record reflected considerable variation in the degree to which Antelope Valley *exercised* control over its carriers; and (2) the putative class as a whole was not subject to pervasive control as to the manner and means of delivering papers. Neither of these considerations resolves the relevant inquiry. Whether Antelope Valley varied in how it exercised control does not answer whether there were variations in its underlying *right* to exercise that control that could not be managed by the trial court. Likewise, the scope of Antelope Valley's right to control the work does not in itself determine whether that right is amenable to common proof.

We discuss first the relationship between the right of control and the exercise of that control. The carriers' relationship with Antelope Valley was governed by a form contract; Antelope Valley stipulated that during the relevant period two such contracts were in use. Self-evidently, "[s]uch agreements are a significant factor for consideration" in assessing a hirer's right to control a hiree's work. (*Tieberg v. Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d at p. 952; see Rest.2d Agency, § 220, subd. (2)(a) [what matters is "the extent of control which, *by the agreement*, the master may exercise over the details of the work," italics added]; *Dalton v. Lee Publications* (S.D.Cal. 2010) 270 F.R.D. 555, 563 ["The primary factor, the right to control, is also susceptible to common proof. This is

10

because the rights and obligations of the class members and Defendant are set forth in two sets of substantially identical contracts."]; *Norris-Wilson v. Delta-T Group, Inc.* (S.D.Cal. 2010) 270 F.R.D. 596, 608 [same].)

At the certification stage, the importance of a form contract is not in what it says, but that the degree of control it spells out is uniform across the class. Here, for example, the two form contracts address, similarly for all carriers, the extent of Antelope Valley's control over what is to be delivered, when, and how, as well as Antelope Valley's right to terminate the contract without cause on 30 days' notice.

The trial court here afforded only cursory attention to the parties' written contract, instead concentrating on the particulars of the parties' many declarations and detailing a dozen or so ways in which delivery practices, or Antelope Valley's exercise of control over those practices, varied from carrier to carrier—e.g., whether carriers were instructed on how to fold papers, whether they bagged or "rubber banded" papers, and whether they followed the delivery order on their route lists. In so doing, the court focused on the wrong legal question—whether and to what extent Antelope Valley exercised control over delivery. But what matters is whether a hirer has the "*legal right* to control the activities of the alleged agent" (*Malloy v. Fong*, *supra*, 37 Cal.2d at p. 370, italics added) and, more specifically, whether the extent of such legal right is commonly provable. In cases where there is a written contract, to answer that question without full examination of the contract will be virtually impossible. (See *Tieberg v. Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d at p. 952 [written agreements are a "significant factor" in assessing the right to control]; *Grant v. Woods*, *supra*, 71 Cal.App.3d at p. 653 ["Written agreements are of probative significance" in evaluating the extent of a hirer's right to control].) Evidence of variations in how work is done may indicate a hirer has not exercised control over those aspects of a task, but they cannot alone differentiate between cases where the omission arises

11

because the hirer concludes control is unnecessary and those where the omission is due to the hirer's lack of the retained right. That a hirer chooses not to wield power does not prove it lacks power. (*Malloy*, at p. 370 ["It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent. The existence of the right of control and supervision establishes the existence of an agency relationship."]; *Robinson v. George* (1940) 16 Cal.2d 238, 244 [absence of evidence a hirer "exercised any particular control over the details" of the work does not show the hirer lacked the right to do so].) One must consider the contract as well.

This is not to say the parties' course of conduct is irrelevant. While any written contract is a necessary starting point, *Tieberg* recognizes the rights spelled out in a contract may not be conclusive if other evidence demonstrates a practical allocation of rights at odds with the written terms. (*Tieberg v. Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d at p. 952.) In deciding whether claims that hinge on common law employee status are certifiable, then, a court appropriately may consider what control is "necessary" given the nature of the work (*Borello*, *supra*, 48 Cal.3d at p. 357, italics omitted), whether evidence of the parties' course of conduct will be required to evaluate whether such control was retained, and whether that course of conduct is susceptible to common proof—i.e., whether evidence of the parties' conduct indicates similar retained rights vis-à-vis each hiree, or suggests variable rights, such that individual proof would need to be managed.

Relatedly, the existence of variations in the extent to which a hirer exercises control does not necessarily show variation in the extent to which the hirer possesses a right of control, or that the trial court would find any such variation unmanageable. That a hirer may monitor one hiree closely and another less so, or enforce unevenly a contractual right to dictate the containers in which its product

12

is delivered, does not necessarily demonstrate that the hirer could not, if it chose, monitor or control the work of all its hirees equally.  (See *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 13–14 [recognizing that how a hirer exercised control over a particular hiree might show, not the hirer's differential control of that hiree, but the extent of its common right to control all its hirees].)  For class certification under the common law test, the key question is whether there is evidence a hirer possessed different *rights* to control with regard to its various hirees, such that individual mini-trials would be required.  Did Antelope Valley, notwithstanding the form contract it entered with all carriers, actually have different rights with respect to each that would necessitate mini-trials?

With one exception, the trial court considered only variations in the actual exercise of control[4] and, by finding such variations sufficient to defeat certification, erroneously treated them as the legal equivalent of variations in the right to control.  Indeed, in places the trial court found Antelope Valley had a uniform right of control, or uniform lack of right, but notwithstanding these uniformities immediately thereafter considered as probative variations in carrier practices, or in Ayala's exercise of its rights.  For example, the trial court concluded, citing the form contract, that Antelope Valley uniformly did not require carriers to purchase rubber bands or bags exclusively from it, but then noted some carriers did and some did not, a variation that shed no light on the relevant inquiry.  Similarly, the trial court concluded Antelope Valley had a

---

**4**      The exception:  As the trial court's order notes, one of the two exemplars of the form contract used during the class period requires carriers to pick up papers from the designated location no later than 3:00 a.m.  The other has no similar deadline.

13

contractual right to impose complaint charges, but then focused on individual variations in how Antelope Valley exercised that undisputed right against different carriers.

We next discuss the relationship between the right of control and the issue for certification purposes, variation in that right. After identifying various differences in how carriers delivered papers, the trial court concluded "the putative class of [Antelope Valley] newspaper carriers was not subject to the 'pervasive and significant control' [of Antelope Valley] over the means and manner by which they performed their work." Consequently, the court held, "[t]he evidence before the Court demonstrates that there is no commonality regarding the right to control." The conclusion does not follow from the premise; indeed, as we discuss, the conclusion is a contradiction of the premise.

Preliminarily, whether the court's premise (that carriers are not subject to pervasive control) is intended to reflect a finding about the limits of Antelope Valley's right to control its carriers' work or, like much of the court's preceding discussion, only a finding about the limited exercise of such rights, is uncertain. To the extent the finding relates to the exercise of rights, as it appears to, it is problematic for all the reasons just discussed. But even assuming for present purposes the finding concerns the scope of Antelope Valley's legal rights, it does not support denial of class certification.

The extent of Antelope Valley's legal right of control is a point of considerable dispute; indeed, it is likely the crux of the case's merits. To address such an issue on a motion for class certification is not necessarily erroneous. We recently reaffirmed that a court deciding a certification motion can resolve legal or factual disputes: "To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Brinker*, *supra*, 53 Cal.4th at p. 1025; see *Dailey v. Sears,*

14

*Roebuck & Co.* (2013) 214 Cal.App.4th 974, 990–991.) But we cautioned that such an inquiry generally should occur only when "necessary." (*Brinker*, at p. 1025.) The key to deciding whether a merits resolution is permitted, then, is whether certification "depends upon" the disputed issue. (*Ibid.*)

Certification of class claims based on the misclassification of common law employees as independent contractors generally does not depend upon deciding the actual scope of a hirer's right of control over its hirees. The relevant question is whether the scope of the right of control, whatever it might be, is susceptible to classwide proof. Bypassing that question, the trial court instead proceeded to the merits.[5] In so doing, the court made the same mistake others have when deciding whether to certify claims predicated on common law employee status, "focus[ing] too much on the substantive issue of the defendant's right to control its newspaper deliverers, instead of whether that question could be decided using common proof." (*Dalton v. Lee Publications*, *supra*, 270 F.R.D. at p. 564.) Moreover, by purporting to resolve on a classwide basis the scope of Antelope Valley's right to control its carriers, the trial court contradicted its own conclusion, that classwide assessment of Antelope Valley's right to control is infeasible.

The difficulties with the court's ruling on class certification thus lie not in the answers given, but the questions asked. A certification decision is reviewed for abuse of discretion, but when the supporting reasoning reveals the court based its decision on erroneous legal assumptions about the relevant questions, that decision cannot stand. (*Brinker*, *supra*, 53 Cal.4th at p. 1022; *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089; *Linder v. Thrifty Oil Co.*, *supra*, 23

---

[5] Assuming again one were to treat the trial court's absence of control determination as speaking to the absence of a sufficient right to control, and not merely to an absence of the exercise of control.

15

Cal.4th at pp. 435–436.)  The trial court denied certification both because of individual variations in whether Antelope Valley exercised control and because control was not pervasive, rather than asking whether Antelope Valley's underlying right of control was subject to variations that would defy classwide proof and prove unmanageable.  That some other analytical path might, on this record, support the same disposition matters not; because the reasons given are unsound, the ruling must be reversed.  (*Linder*, at p. 436.)  In such a case, the preferred course is to remand for the trial court to reconsider class certification under the correct legal standards.  (*Id.* at pp. 448–449.)

B.    *Secondary Factors*

After concluding variations in control precluded class certification, the trial court noted as well individual variations in a handful of the secondary factors that supplement the central inquiry into the right of control (see *Borello*, *supra*, 48 Cal.3d at pp. 350–351; *Tieberg v. Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d at p. 950 & fn. 4), including whether carriers are engaged in a distinct occupation or business; their instrumentalities, tools, and place of work; and the length of time for which services are to be performed.  Because the Court of Appeal addressed these factors' role, the parties have briefed their application at length, and they may affect class certification on remand, we briefly discuss the interplay between the secondary factors and the predominance inquiry.

Preliminarily, we caution that courts assessing these secondary factors should take care to correctly identify the relevant considerations.  Here, for example, the trial court noted variation in the "place of work."  The inquiry that sheds light on a hiree's common law employee status, however, is into *who provides* the place of work, the hirer or hiree (*Borello*, *supra*, 48 Cal.3d at p. 351; Rest.3d Agency, § 7.07, com. f, p. 211; Rest.2d Agency, § 220, subd. (2)(e)), and thus the relevant inquiry is whether there is variation in who provides facilities.

16

That carriers could pick up papers at any of several Antelope Valley warehouses or drop locations, as Antelope Valley argued, does not show variation in the underlying secondary factor.

In evaluating how a given secondary factor may affect class certification, a court must identify whether the factor will require individual inquiries or can be assessed on a classwide basis. In a case where every class member performs the same tasks, some factors will always be common, such as the kind of occupation and the skill it requires. (*Borello*, *supra*, 48 Cal.3d at p. 351.) Other factors that might on their face seem to turn solely on the peculiarities of the parties' particular arrangement, the Restatement intended to depend as well on general custom with respect to the nature of the work: "It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other. However, community custom in thinking that a kind of service, such as household service, is rendered by servants, is of importance." (Rest.2d Agency, § 220, com. m, p. 492; see also *id.*, com. i, p. 489 ["The custom of the community as to the control ordinarily exercised in a particular occupation is of importance."].) Depending on the record, still other factors may vary from hiree to hiree. (See *Sotelo v. Medianews Group, Inc.*, *supra*, 207 Cal.App.4th at pp. 657–658.)

Once common and individual factors have been identified, the predominance inquiry calls for weighing costs and benefits. "The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1021.) "Individual issues do not render class certification

17

inappropriate so long as such issues may effectively be managed." (*Sav-On Drug Stores, Inc. v. Superior Court*, *supra*, 34 Cal.4th at p. 334; accord, *Duran v. U.S. Bank National Association* (2014) 59 Cal.4th 1, 29.)

When the issue of common law employment is involved, that weighing must be conducted with an eye to the reality that the considerations in the multi-factor test are not of uniform significance. Some, such as the hirer's right to fire at will and the basic level of skill called for by the job, are often of inordinate importance. (See *Burlingham v. Gray*, *supra*, 22 Cal.2d at p. 100 [" 'Perhaps no single circumstance is more conclusive to show the relationship of an employee than the right of an employer to end the service whenever he sees fit to do so.' "]; Rest.2d Agency, § 220, com. i, p. 489 [the hirer's right of control, "together with the skill which is required in the occupation, is often of almost conclusive weight"].) Others, such as the "ownership of the instrumentalities and tools" of the job, may be of "only . . . evidential value," relevant to support an inference that the hiree is, or is not, subject to the hirer's direction and control. (Rest.2d Agency, § 220, com. k, p. 491; see *Tieberg v. Unemployment Ins. App. Bd.*, *supra*, 2 Cal.3d at p. 953 [many secondary factors "are mer[e]ly evidentiary indicia of the right to control" and may be of "minute consequence" when independent evidence clearly establishes that right].) Moreover, the significance of any one factor and its role in the overall calculus may vary from case to case depending on the nature of the work and the evidence. (*Borello*, *supra*, 48 Cal.3d at p. 354.)

Accordingly, the impact of individual variations on certification will depend on the significance of the factor they affect. Some may be of no consequence if they involve minor parts of the overall calculus and common proof is available of key factors such as control, the skill involved, and the right to terminate at will; conversely, other variations, if they undermine the ability to prove on a common basis the most significant factor or factors in a case, may

18

render trial unmanageable even where other factors are common. The proper course, if there are individual variations in parts of the common law test, is to consider whether they are likely to prove material (see *Bradley v. Networkers Internat., LLC*, *supra*, 211 Cal.App.4th at p. 1147 [variations do not defeat certification where they are insufficiently significant to the overall inquiry]; *Dalton v. Lee Publications*, *supra*, 270 F.R.D. at pp. 562–563 [same]; *Norris-Wilson v. Delta-T Group, Inc.*, *supra*, 270 F.R.D. at p. 608 [same]), and, if material, whether they can be managed (*Brinker*, *supra*, 53 Cal.4th at p. 1024).

Here, the trial court simply recited secondary factor variations it found without doing the necessary weighing or considering materiality. This was understandable, as the court had already determined substantial variations in control existed, a determination that, had it been sound, would have been sufficient to justify denying class certification and thus obviated any need for further inquiry. On remand, any consideration of common and individual questions arising from the secondary factors should take into account the likely materiality of matters subject to common or individual proof.

19

**DISPOSITION**

We affirm the Court of Appeal's judgment and remand for further proceedings not inconsistent with this opinion.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KENNARD, J.**[*]

---

[*] Retired Associate Justice of the Supreme Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CONCURRING OPINION BY BAXTER, J.**


I agree with the majority on the following points: First, whether one retained to provide compensated service to another is an employee or an independent contractor for purposes of the common law depends primarily on the degree to which the hirer has the legal *right* to control the manner and means of performance, as opposed to the extent to which the hirer *exercises* (or attempts to exercise) such control. Second, where a written contract specifies the terms of the relationship between hirer and hiree, setting out their respective degrees of control over the work, such a contract is generally the most significant determinant of whether an employer-employee relationship has arisen. Third, whether the issue of employee status can be resolved on a classwide basis thus depends on the degree to which it appears the hirer's legal *right* of control, however great or small, was similar for all members of the putative class — as evidenced, for example, by a standard contract that was common to all.

Applying these principles, I concur in the majority's conclusion that the trial court's denial of class certification proceeded on incorrect principles. As the majority indicates, the trial court erred by focusing its attention exclusively on evidence that defendant actually *imposed* more detailed supervisory control over some of its contract newspaper carriers than others, and that the degree of such *actual* supervision varied widely from carrier to carrier. I therefore join the majority's holding that the Court of Appeal's judgment, overturning the trial

court's order and remanding for further proceedings, should be affirmed.  In my view, nothing more need be said to reach this conclusion, and I therefore express no opinion on any other matter discussed by the majority.


                                        BAXTER, J.

I CONCUR:

CORRIGAN, J.

**CONCURRING OPINION BY CHIN, J.**


I agree that the trial court committed error in the course of ruling on the class certification motion of named plaintiffs Maria Ayala, Josefina Briseño, Rosa Duran, and Osman Nuñez, that remand for further consideration of the motion is necessary, and that affirmance of the Court of Appeal's judgment is appropriate. The record indicates that the trial court did not adequately consider the extent to which there will be common proof regarding a central factor in determining whether carriers who deliver newspapers for defendant Antelope Valley Newspapers, Inc. (Antelope Valley) are employees or independent contractors: the extent to which Antelope Valley has the right to control the manner and means by which the carriers accomplish their work. The record also suggests that the trial court did not adequately perform the weighing of common and individualized proof necessary to determine whether common issues predominate.

However, in several respects, I question the majority's legal analysis. I also do not endorse its dicta regarding some of the secondary factors that are relevant to determining whether someone who provides service to another is an employee or an independent contractor. (Maj. opn., *ante*, at pp. 16-19.) I therefore concur only in the judgment.

# I. FACTUAL AND PROCEDURAL BACKGROUND.

In December 2008, plaintiffs sued on behalf of a putative class of newspaper carriers, alleging that Antelope Valley improperly treated them as independent contractors instead of employees and improperly denied them various statutory wage and hour protections. The complaint alleged numerous violations of our labor laws — including unpaid overtime, unlawful deductions, failure to provide breaks, and failure to reimburse for business expenses — and unfair competition based on those violations. Plaintiffs moved for class certification, contending that the central question in establishing liability — whether carriers are employees or independent contractors — would be resolved through common proof, principally the contracts between Antelope Valley and its carriers.

Antelope Valley opposed certification, arguing in relevant part that there was insufficient commonality regarding proof of its right to control the means and manner by which its carriers accomplish their work, its actual exercise of control, and various secondary factors that, under *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 (*Borello*), are relevant to determining whether a service provider is an employee or an independent contractor. Antelope Valley further argued that even were the carriers employees, some of the causes of action presented additional unmanageable individual issues that should nevertheless preclude certification.

The trial court denied the certification motion, finding that plaintiffs had failed to show that (1) "common questions of law or fact predominate," (2) "a class action would be 'superior' to individual lawsuits," or (3) despite the "highly individualized" nature of "the issues affecting the class," "manageability is achievable through the use of" various procedural tools, including questionnaires, surveys, and representative sampling. As to the claims still at issue in this appeal, the Court of Appeal reversed, believing that the trial court had based its ruling on

2

"variations in how the carriers performed their jobs," and finding that "those variations do not present individual issues that preclude class certification." We then granted Antelope Valley's petition for review.

## II. THE LEGAL INQUIRY.

As relevant to this appeal, plaintiffs, as the proponents of certification, had the burden in the trial court to demonstrate that " 'questions of law or fact common to the class predominate over the questions affecting the individual members.' " (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104.) "To assess predominance, a court 'must examine the issues framed by the pleadings and the law applicable to the causes of action alleged.' [Citation.] It must determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence. [Citation.]" (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1024 (*Brinker*).) Thus, in assessing predominance, courts "must carefully evaluate the nature of the proof" the parties will present. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 622.) The "ultimate question" is whether "the issues [that] may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins v. Rocha* (1972) 7 Cal.3d 232, 238.)

The decision to grant or deny a certification motion "rests squarely within the discretion of the trial court" because the trial court is " 'ideally situated to evaluate the efficiencies and practicalities of permitting group action.' " (*Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1089.) Accordingly, reviewing courts "afford" trial court decisions "great deference on appeal, reversing only for a manifest abuse of discretion." (*Ibid.*) Under its "narrowly circumscribed"

3

inquiry, a reviewing court generally may not disturb an order denying certification unless " 'it is unsupported by substantial evidence' " or " 'rests on improper criteria . . . or . . . erroneous legal assumptions.' " (*Brinker*, *supra*, at p. 1022.) In applying this test, a reviewing court "must '[p]resum[e] in favor of the [trial court's] order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .' [Citation.]" (*Ibid.*)

As we have recognized, the predominance inquiry "may be enmeshed with" issues "affecting the merits of a case." (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th at 429, 443.) "When evidence or legal issues germane to the certification question bear as well on aspects of the merits, a court may properly evaluate them." (*Brinker*, *supra*, 53 Cal.4th at pp. 1023-1024.) "[I]if the parties' evidence is conflicting on the issue of whether common or individual questions predominate . . . , the trial court is permitted to credit one party's evidence over the other's in determining whether the requirements for class certification have been met — and doing so is not . . . an improper evaluation of the merits of the case. [Citations.]" (*Dailey v. Sears, Roebuck and Co.* (2013) 214 Cal.App.4th 974, 991, citing *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 331 (*Sav-On*).) To the extent the trial court's order turns on inferences to be drawn from the facts or on an evaluation of the credibility of conflicting evidence, a reviewing court may not "substitute" its "judgment for the trial court's." (*Sav-On*, *supra*, at p. 331.) Even at the certification stage, " 'questions as to the weight and sufficiency of the evidence, the construction to be put upon it, the inferences to be drawn therefrom, the credibility of witnesses . . . and the determination of [any] conflicts and inconsistency in their testimony are matters for the trial court to resolve.' [Citation.]" (*Id.* at p. 334.)

Under the complaint, as a prerequisite to recovery, plaintiffs must establish that they are employees of Antelope Valley rather than independent contractors.

4

In litigating the certification motion below, both plaintiffs and Antelope Valley maintained that this issue is governed by the principles and considerations *Borello* set forth. Consistent with the parties' arguments, both the trial court and the Court of Appeal applied *Borello*'s principles in determining whether certification was appropriate. In accordance with Antelope Valley's petition for review, the issue on which we granted was whether the trial court abused its discretion in finding that, under *Borello*'s test for determining whether someone is an employee or an independent contractor, common questions of law or fact will not predominate over individual questions.

The issue in *Borello* was whether, for purpose of workers' compensation coverage, certain agricultural laborers were employees or independent contractors. (*Borello*, *supra*, 48 Cal.3d at p. 345.) In answering this question, we began by explaining that the Workers' Compensation Act distinguishes between covered employees and noncovered independent contractors based on "the common law 'control-of-work' test," under which an employment relationship exists if " 'the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired. . . .' [Citations.]" (*Id.* at p. 350.) We next held that, because "the 'control' test, applied rigidly and in isolation, is often of little use in evaluating the infinite variety of service arrangements," it is appropriate to consider various " 'secondary' indicia of the nature of a service relationship." (*Ibid.*) We found the relevant secondary indicia in multiple sources. From our own decisions, we identified " 'the right to discharge at will, without cause,' " as a factor. (*Ibid.*) We then listed "[a]dditional factors [that had] been derived principally from" the Restatement Second of Agency (sometimes, Restatement). (*Borello*, *supra*, at p. 351.) We then identified factors the Legislature had identified in Labor Code section 2750.5. (*Borello*, *supra*, at p. 351, fn. 5.) Finally, we identified factors the federal courts had adopted in

5

applying the federal Fair Labor Standards Act (FLSA factors). (*Borello*, *supra*, at pp. 354-355.) All of these factors, we held, are relevant to determining whether someone is an employee under the worker's compensation law. (*Ibid.*)

Consistent with *Borello*, in determining whether common questions of law or fact predominate, the trial court principally focused on Antelope Valley's "right to control." It found that the evidence the parties had submitted "demonstrates that there is no commonality regarding the right to control" and that "heavily individualized inquiries [will be] required to conduct the 'control test.' " Regarding the secondary factors, the trial court found that "[s]ome carriers use helpers or substitutes"; "some carriers have multiple clients and customers; some have distinct occupation or delivery businesses; there is no commonality in the instrumentalities, tools, and place of work; carriers may or may not take advantage of chances to generate profits; and the length of time to perform services varies." Contrary to what the majority opinion suggests (maj. opn., *ante*, at p. 11), in reaching these conclusions, the trial court considered several aspects of Antelope Valley's contracts with its carriers, specifically the following: (1) some contracts included a "dock closing policy" while others did not; (2) the contracts did not require carriers to purchase rubber bands or bags from Antelope Valley; (3) the contracts stated that carriers may not put newspapers in containers that Antelope Valley has not approved; (4) the contracts provided for complaint charges; (5) the contracts provided some carriers with an option to redeliver newspapers to correct complaints, but that option was not available for certain routes or areas; and (6) the contracts provided that carriers could increase their profits by increasing the number of subscribers in their areas of delivery. The trial court also considered evidence — declarations and deposition testimony — showing how individual carriers actually performed their delivery duties, how Antelope Valley actually

6

exercised control over the delivery process and its carriers as a group, and how Antelope Valley actually exercised such control with respect to particular carriers.

### III. THE TRIAL COURT ERRED IN MAKING ITS RULING.

I agree with the majority that the trial court abused its discretion in making its ruling and that remand is appropriate for further consideration of the certification motion. As noted above, in denying certification, the trial court found that the evidence "demonstrates that no commonality exists regarding the right to control." However, the evidence plaintiffs submitted and principally relied on in support of their certification motion — including the form contracts between Antelope Valley and its carriers and the delivery instructions (known as "Bundle Tops") that Antelope Valley typically prepared and provided to all carriers each day — shows that there is, in fact, some commonality in the proof regarding Antelope Valley's right of control. Moreover, there surely is some commonality of proof regarding at least some of the secondary factors that are relevant under *Borello* to determine whether someone is an employee or independent contractor. Thus, in terms of proof, the trial court's "no commonality" finding lacks support in the record and reflects insufficient consideration of the common proof plaintiffs submitted.

In addition, as we have explained, " 'that each [putative] class member might be required ultimately to justify an individual claim does not necessarily preclude maintenance of a class action.' [Citation.] Predominance is a comparative concept, and 'the necessity for class members to individually establish eligibility and damages does not mean individual fact questions predominate.' [Citations.] Individual issues do not render class certification inappropriate so long as such issues may effectively be managed. [Citations.]" (*Sav–On*, *supra*, 34 Cal.4th at p. 334.) The "ultimate question" is whether "the issues [that] may be jointly tried, when compared with those requiring separate

7

adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." (*Collins v. Rocha*, *supra*, 7 Cal.3d at p. 238.) "The relevant comparison lies between the costs and benefits of adjudicating plaintiffs' claims in a class action and the costs and benefits of proceeding by numerous separate actions — not between the complexity of a class suit that must accommodate some individualized inquiries and the absence of any remedial proceeding whatsoever." (*Sav-On*, *supra*, at p. 339, fn. 10, italics omitted.) The record indicates that the trial court did not make the necessary comparison; it focused on the individualized proof it believed would be necessary regarding Antelope Valley's right and actual exercise of control, and gave little or no consideration to the common proof plaintiffs submitted on these issues. By failing to make the legally required comparison, the trial court abused its discretion. I therefore agree we should affirm the Court of Appeal's judgment and remand for additional consideration of the certification motion.

### IV. THE MAJORITY'S OPINION.

Although I agree with the majority's result, I question several aspects of its analysis. I begin with the fundamental rule that "[o]n appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' [Citation.]" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Consistent with these principles, to the extent the trial court's order is ambiguous, we must "resolve the ambiguity in favor of affirmance." (*Piscitelli v. Salesian Soc.* (2008) 166 Cal.App.4th 1, 7, fn. 9.) I find the majority's approach, which generally seems to read the trial court's ruling in the most unfavorable light, to be out of step with these well-established principles of appellate review.

8

More specifically, I find many of the numerous criticisms the majority levels at the trial court's ruling to be off the mark. For example, I disagree that the trial court "ultimately rested" its order on variations "in the degree to which Antelope Valley *exercised* control over its carriers" and the circumstance that "the putative class as a whole was not subject to pervasive control as to the manner and means of delivering papers," thus "los[ing] sight" of the relevant question "at the certification stage" (maj. opn., *ante*, at pp. 9-10): "is there a common way to show Antelope Valley possessed essentially the same legal right of control with respect to each of its carriers" (*id.* at pp. 9-10). As noted above, in finding insufficient commonality, the trial court expressly considered the extent to which *the contracts* showed either variations or uniformity in Antelope Valley's "right to control" regarding several issues, including complaint charges, when carriers perform their work, use of unapproved containers, redelivery, and the carriers' ability to increase profits. Indeed, the majority acknowledges elsewhere in its opinion that the trial court did, in fact, consider ways in which the contracts show "a uniform right of control, or uniform lack of right," but it then criticizes the trial court for considering evidence that the parties' actual course of conduct was different. (Maj. opn., *ante*, at p. 13.)

Contrary to the majority's criticism, the trial court's analysis was completely consistent with — indeed, was actually *required by* — *Borello*. There, we stressed that the right to control test "is not necessarily the decisive test" (*Borello*, *supra*, 48 Cal.3d at p. 351, fn. 5), that "common law principles are *not* dispositive of the employment relationship" (*id.* at p. 352, fn. 6), that "[t]he nature of the work, and the overall arrangement between the parties, must be examined" in addition to the right to control (*id.* at p. 353), and that "[e]ach service arrangement must be evaluated on its facts, and the dispositive circumstances may vary from case to case" (*id.* at p. 354). Consistent with these statements, in

9

finding as a matter of law that the agricultural laborers in *Borello* were employees, we explained that the evidence showed that the grower, "though purporting to relinquish supervision of the harvest work itself" (*id.* at p. 355), *actually* " 'exercise[d] 'pervasive control over the operation as a whole' " (*id.* at p. 356). Significantly, we expressly noted that, given this evidence of the grower's actual exercise of control, a contractual provision purporting to give the laborers joint control over acceptable buyers was entitled to "little credence." (*Id.* at p. 356, fn. 7.) Thus, in considering the parties' actual course of conduct in addition to the contracts, the trial court here simply did what *Borello required* it to do. It also did what the record shows *both* plaintiffs and Antelope Valley urged it to do. Applying *Borello* at the certification stage, the trial court had to determine the extent to which there would be common proof regarding the "overall arrangement between" Antelope Valley and each of the putative class members. (*Id.* at p. 353.) The trial court's ruling indicates that the trial court did precisely that.

Nor do I agree with the majority that the trial court, "by finding" that "variations in the actual exercise of control" were "sufficient to defeat certification, erroneously treat[ed] them as the legal equivalent of variations in the right to control." (Maj. opn., *ante*, at p. 13.) The majority's view appears to stem from its belief that the determination of whether the carriers were employees or independent contractors turns *only* on Antelope Valley's right to control. As explained above, *Borello* establishes otherwise. So does another decision on which *Borello* extensively relied and which the majority cites: *Tieberg v. Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 946. (*Borello*, *supra*, 48 Cal.3d at pp. 349-351; maj. opn., *ante*, at p. 12.) There, we held that, in determining that certain television writers were employees and not independent contractors, the trial court had "improperly" declined to consider relevant secondary indicia, including the Restatement factors. (*Tieberg*, *supra*, at p. 946.) We also noted that

10

"the terminology in an agreement is not conclusive," even if it states that one party has " 'complete control of the services which the employee will render.' " (*Id.* at p. 952.) Nevertheless, we upheld the trial court's determination because the trial court had relied not "solely upon" the alleged right to control under "the provisions of the contract," but also on evidence that it had "in fact exercised control and direction over the writers." (*Ibid.*) Thus, under *Borello* and its predecessors, evidence of an alleged employer's "actual exercise of control" has independent significance, and "variations in the . . . exercise of control" are independently relevant to the certification question. (Maj. opn., *ante*, at p.13.) Accordingly, there is no basis for the majority's assumption that by resting its decision in part on "variations in the actual exercise of control," the trial court was "treat[ing] them as the legal equivalent of variations in the right to control." (*Ibid.*) Moreover, given *Borello* and *Tieberg*, the majority errs in stating that "how much control a hirer *exercises*" does not "matter[]," and that the only thing that "matters" is "how much control the hirer retains the *right* to exercise" (maj. opn., *ante*, at p. 8) and whether "there were variations in" Antelope Valley's "underlying right to exercise" control over its carriers (maj. *opn.*, ante, at p. 10, italics omitted).

I also do not entirely agree with the majority's assertion that, "[a]t the certification stage, the importance of a form contract is not in what it says, but that the degree of control it spells out is uniform across the class." (Maj. opn., *ante*, at p. 11.) As noted above, to assess predominance, a court "must determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence. [Citation.]" (*Brinker*, *supra*, 53 Cal.4th at p. 1024.) Insofar as the terms of a form contract make clear that the alleged employer's right of control is extensive, it is more likely that the elements

11

necessary to establish liability will be susceptible of common proof and that there will be ways effectively to manage proof of elements that may require individualized evidence.  Insofar as the terms of a form contract provide that the alleged employees retain extensive control over the details of their work, it is less likely that the elements necessary to establish liability will be susceptible of common proof and that there will be ways effectively to manage proof of elements that may require individualized evidence.  Accordingly, what a form contract says may be of considerable importance in determining whether common issue predominate.

I also disagree we should limit our analysis to whether the trial court abused its discretion in applying the "common law test" for employment, and should ignore the FLSA factors *Borello* adopted.  (Maj. opn., *ante*, at pp. 6, 8, fn. 3.)  Contrary to what the majority indicates, neither the trial court nor the Court of Appeal applied only "the common law test."  (Maj. opn., *ante*, at p. 5.)  The trial court never used the phrase "common law" in either its ruling or during hearings on the certification motion.  It did, however, consistently refer during the hearings to "the *Borello* factors" and "the criteria from the *Borello* case" and cite in its subsequent written ruling at least two of the FLSA factors *Borello* adopted: whether the carriers "use helpers or substitutes from time to time" and whether they can and do take action to "increase their profits" and "compensation."[1]  (See *Borello*, 48 Cal.3d at p. 355 [relevant FLSA factors include "the alleged employee's opportunity for profit or loss depending on his managerial skill" and

---

[1]     Like its final written ruling, the trial court's written tentative ruling did not mention the "common law."  It did, however, state the court's intention to deny the certification motion because "many" of the putative class members "will be found to be true independent contractors" because they do not "satisfy the *Borello* factors for determination of employee vs. independent contractor status."

his or her "employment of helpers"].) Consistent with this ruling, the Court of Appeal explained that *Borello* (1) adopted both the Restatement factors and the "six-factor test developed by other jurisdictions," and (2) "cautioned that the individual factors — from the Restatement as well as the six-factor test — ' "cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." ' [Citation.]" Nor did the Court of Appeal use the phrase "common law," with a single exception: in quoting the passage of *Borello* that explains why " 'the "control" test,' " which derives from " 'common law tradition,' " " 'is often of little use in evaluating the infinite variety of service arrangements.' "

The lower courts' application of all the *Borello* factors is consistent with the arguments the parties made below. In the briefs they filed in support of their certification motion and during argument on the motion, plaintiffs argued that "[n]ewspaper delivery is an integral part of [Antelope Valley's] business" and that "the carriers perform an integral part of [Antelope Valley's] newspaper business." "[W]hether the service rendered is an integral part of the alleged employer's business" is one of the FLSA factors *Borello* adopted. (*Borello*, *supra*, 48 Cal.3d at p. 355.) Moreover, in their briefing, plaintiffs relied on the "factor" analysis the Court of Appeal used in *Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839 (*Poizner*) to find that Antelope Valley's carriers were employees rather than independent contractors. *Poizner*, which involved Antelope Valley's workers' compensation insurance premium, looked to all of the factors *Borello* cited, including the FLSA factors. (*Id.* at p. 853.) Thus, plaintiffs did not, as the majority asserts, "proceed[] below on the sole basis that they are employees under the common law." (Maj. opn., *ante*, at pp. 5-6.) Likewise, in its opposition to the certification motion, Antelope Valley relied on the same two FLSA factors the trial court cited in its written ruling: some carriers use "helpers or substitutes" to

13

fulfill their contractual obligation and carriers have the "ability to generate profits or incur losses." Thus, the record does not support limiting our analysis to the common law test for employment and ignoring the FLSA factors.[2]

Finally, I do not endorse the majority's dicta regarding the "interplay" between "the predominance inquiry" and the Restatement factors in determining whether someone is an employee or an independent contractor. (Maj. opn., *ante*, at p. 16.) In light of the majority's conclusion, that discussion is unnecessary. Substantively, it is also questionable in at least one respect. The majority asserts that certain Restatement "factors that might on their face seem to turn solely on the peculiarities of the parties' particular arrangement, the Restatement intended to depend as well on general custom with respect to the nature of the work." (Maj. opn., *ante*, at p. 17.) However, the Restatement comment the majority quotes in support of this assertion describes, not multiple "factors," but only *one* factor: whether " 'the parties believe or disbelieve that the relation of master and servant exists.' " (Maj. opn., *ante*, at p. 17.) Moreover, the comment indicates, not that this factor depends in part "on general custom with respect to the nature of the work" (maj. opn., *ante*, at p. 17), but that a *separate* factor is "community custom in thinking that a kind of service . . . is rendered by servants" (Rest.2d Agency, § 220, com. m, p. 492; see also *id.*, com. h, p. 489 [listing as separate factors "the fact that the community regards those doing such work as servants" and "the belief by the parties that there is a master and servant relation"]).

---

[2]     My conclusion reflects only fidelity to the record, not, as the majority asserts, any "assumption" on my part. (Maj. opn., *ante*, at p. 8, fn. 3.) In determining whether an order denying certification was error, an appellate court should apply "the theory on which plaintiffs pursued class certification." (*Fairbanks v. Farmers New World Life Ins. Co.* (2011) 197 Cal.App.4th 544, 560.)

14

For the preceding reasons, I concur in the judgment.

CHIN, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Ayala v. Antelope Valley Newspapers, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 210 Cal.App.4th 77
**Rehearing Granted**

_____

**Opinion No.** S206874
**Date Filed:** June 30, 2014

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Carl J. West

_____

**Counsel:**

Callahan & Blaine, Daniel J. Callahan, Jill A. Thomas, Michael J. Sachs, Kathleen L. Dunham and Scott D. Nelson for Plaintiffs and Appellants.

Aaron Kaufmann for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Jocelyn Larkin, Della Barnett, Michael Caeser; and Fernando Flores for Asian Law Caucus, Centro de La Raza, Equal Rights Advocates, Impact Fund, La Raza Centro Legal, Lawyers' Committee for Civil Rights, Legal Aid Society-Employment Law Center, National Employment Law Project, Public Justice, P.C., Wage Justice Center, Watsonville Law Center, Western Center on Law and Poverty, Women's Employment Rights Clinic at Golden Gate University of Law and Worksafe as Amici Curiae on behalf of Plaintiffs and Appellants.

Perkins Coie, Sue J. Stott, William C. Rava, Jenica D. Mariani and Eric D. Miller for Defendant and Respondent.

Seyfarth Shaw, Camille A. Olson and David D. Kadue for The California Employment Law Council and The California Chamber of Commerce as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Scott D. Nelson
Callahan & Blaine
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA  92707
(714) 241-4444

Aaron Kaufmann
1330 Broadway, Suite 1450
Oakland, CA  94612
(510) 272-0169

Eric D. Miller
Perkins Coie
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
(206) 359-8000